**NEXUS BANKRUPTCY**
BENJAMIN HESTON (297798)
100 Bayview Circle #100
Newport Beach, CA 92660
Tel: 949-312-1377
Fax: 949-288-2054
ben@nexusbk.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>DONALD MEINBERG,<br><br>        Debtor. | Case No.: 6:23-bk-11360-WJ<br><br>Chapter 13<br><br>**THIRD SUPPLEMENTAL OPPOSITION TO MOTION TO DISMISS**<br><br>**<u>Hearing</u>**<br>**Date: February 7, 2024**<br>**Time: 3:00 pm**<br>**Courtroom: 304** |

Debtor, Donald Meinberg, hereby submits the following third supplemental opposition brief to the motion of Premier Capital LLC to dismiss this case with a bar against re-filing.

In Premier Capital's brief filed on November 22, 2023, they allege that the Debtor testified at his 341(a) examination that he failed to disclose income, assets, and inflated his expenses. Premier Capital further argues that these misrepresentations are evidence of bad faith which should serve as a basis for barring the Debtor from filing a subsequent bankruptcy case. Premier Capital alleges that Debtor testified that he: 1) failed to list timeshares; 2) failed to list $8,725 worth of jewelry; 3) failed to list income from working as clergy; 4) failed to list an inheritance; 5) inflated his expenses. Although Debtor did testify that he did not list the timeshares, it was later discovered

1

that the timeshares did not need to be listed. Everything else that Premier Capital is alleging is false.

### **Timeshares**

Attached hereto as Exhibit A is the transcript for the 341(a) examination that was held on May 17, 2023. The excerpts cited herein are all questions being posed by Mark Sorsanavongsa, Vice President of Premier Capital, to Donald Meinberg, the Debtor.

Q.    In your wife's bankruptcy you had listed two timeshares. One, 183 Lagunita Lane in Bear Lake, California, and two, 620 Lake Havasu City in Arizona. Do you still own those timeshares?

A.    Yes.

Q.    What is the value of those timeshares, please?

A.    Well, I've been trying to sell them for a long time. They have no -- minimum I'm going to say. I've had a couple timeshare type companies try to sell them. They just don't have any value today.

Q.    How long are the timeshares for?

A.    One week. One fixed week.

*341 Transcript, 8:12 – 23.*

After the 341(a) examination, Debtor's Counsel took a closer look at the timeshares in question and found that they were not timeshares, but were vacation exchange memberships. As such, the Schedules were not amended since there was no error or omission.

### **Jewelry**

Q.   Okay. And in the claim of exemption you had also listed that you

had $8,725 worth of jewelry. In your bankruptcy petition you listed

only $1,000 worth of jewelry. Can you please explain the

difference?

A.   No, I don't -- I don't recall putting -- what we put for the original

exemption. So, no, I don't -- I don't recall.

Q.   As it stands today then, how much in jewelry do you have?

A.   I -- most of the jewelry my wife has. I had zero. I have zero -- well,

I have my watch and I have my wedding ring. I don't wear jewelry.

I don't own jewelry. I have nothing.

Q.   Have you or your wife sold any jewelry within the last two years?

A.   No, sir.

*341 Transcript, 7:21 – 8:11.*

Debtor's statements are consistent with both his Schedule A/B as well as what
was filed in his wife's bankruptcy. What Premier Capital is referring to is a claim of
exemption that was submitted in the State Court action wherein Debtor, who was at that
time self-represented, accidentally listed the amount of exemption available under
C.C.P. §704.040 rather than the value of the jewelry he owned.  C.C.P. §704.040
provides as follows:

Jewelry, heirlooms, and works of art are exempt to the extent that the
aggregate equity therein does not exceed **eight thousand seven
hundred twenty-five dollars ($8,725)**.

*California Code of Civil Procedure §704.040.*

**<u>Income From Church</u>**

1

2  Q.  Don, you listed you're 100-percent owner of Reflections Christian

3       Fellowship. Can you tell us how much you get paid from the church,

4       and what does the church own?

5  A.  First of all, I don't own any part of the church. It's not -- it's a

6       community church that I'm the pastor of the church. I don't have

7       any assets. We don't own a building. We have -- no building, no

8       assets whatsoever. We rent a small little banquet hall in the City of

9       Perris. I don't own the church, I'm the pastor of the --

10  Q.  Does the church pay any of your expenses or has the church paid

11       any of your expenses in the past?

12  A.  No.

13  Q.  Do you have signatory authority over the bank accounts of the

14       church?

15  A.  I -- there are multiple people that has signator authority of the

16       church.

17  Q.  Are you one of those people?

18  A.  Yes.

19  Q.  Okay.

20  A.  But I cannot -- I cannot spend any money without approval of the

21       board of leaders of the church.

22  Q.  All right. And those -- those accounts are -- they are not listed on

23       your bankruptcy petition, correct?

24  A.  I don't own it, so, yeah -- no, the answer's no.

25  Q.  You have signatory authority over this -- over them though,

26       correct? Yes or no, please.

27  A.  No. I have -- I'm one signator authority over --

28

1    Q.    Thank you. You had also listed $400 in monthly charitable
2             contributions. Where do those go and how ar those charitable
3             contributions made, via check, other form?

4    A.    Yes.

5    Q.    "Yes" to what, Mr. Meinberg?

6    A.    Yes to -- I donate money to my church, and I do it based on a check,
7             money order, cash, whatever I have that's convenient.

8    Q.    Okay. So that -- you make donations to the church that you're a
9             pastor of --

10    A.    Correct.

11    Q.    -- correct?

12    A.    That is correct.

13    Q.    And you don't -- you don't receive any payment for your services as
14             a pastor, correct?

15    A.    Well, to be honest, I did, but everything changed precovid -- I
16             mean, excuse me, everything changed at covid. The church moved.
17             The church reduced extremely much. The church almost fell apart.
18             So, the church ran out of money. So I guess the answer to your
19             question is, no.

20    *341 Transcript, 9:10 – 11:8.*

21

22    At no point did the Debtor say that he receives income from the church or that he
23 failed to list any income.

24

25

26

27

28

### **Inheritance**

Q.  Don, you got a $90,000 inheritance. Can you please tell us when
    you received it and what you spent the money on?

A.  The inheritance was early last year, and the money was spent on
    outstanding bills.

Q.  Okay. So is that within the last -- within the last year then, within
    the last 12 months you received it then you've spent it?

A.  Yes, sir, that's correct.

Q.  Is there a paper trail?

A.  For every dollar? There isn't --

Q.  For the majority of the money.

A.  Yes, sir."

*341 Transcript, 6:13 – 25.*


Q.  You recently listed a $10,000 IRA at PNC Bank. When was this IRA
    funded, because it was not previously listed in Linda's bankruptcy?

A.  It was last year.

Q.  Within the last 12 months?

A.  This is May. Right around 12 months, yeah.

Q.  And where did the money come from?

A.  That was -- that was the last part of the money from the
    inheritance."

*341 Transcript, 11:15 – 23.*


As noted previously, the inheritance was deposited into the Debtor's bank
account, a portion was put into an IRA account, and the remainder was spent on normal
living expenses.

**Inflated Expenses**

At no point during the 341(a) examination did the Debtor testify that he inflated his expenses. The only time that Debtor's expenses were even mentioned is in the context of his tithe which he makes to his small church where he is a pastor, which is a customary and expected practice.

**CONCLUSION**

In the absence of actual bad faith, Premier Capital seems to have resorted to accusing the Debtor of their own tactics. Premier Capital accused the Debtor of running afoul of the principles of collateral estoppel, yet argues different values and puts forth different appraisals in different forums depending on which is more advantageous for a particular purpose. Premier Capital accuses the Debtor of making false statements, then completely misstates the Debtor's testimony in an effort to mislead the Court.

For the reasons stated herein, the Debtor respectfully requests that the Court deny Premier Capital's request and allow the bar to expire on February 16, 2024.

NEXUS BANKRUPTCY

Date: February 1, 2024

BENJAMIN HESTON,
Attorney for Debtor

# EXHIBIT A

1                   OFFICE OF THE UNITED STATES TRUSTEE

2                           RIVERSIDE DIVISION

3

4  In Re:                          )  Case No. 6:23-bk-11360-WJ
                                    )
5  DONALD MEINBERG,                 )  Chapter 13
                                    )
6            Debtor.                )
   _____ )
7

8                           341(a) MEETING

9                     BRIDGET KELLY, Presiding

10                           --oOo--

11                    Wednesday, May 17, 2023

12              3801 University Avenue, Suite 100
                   Riverside, California 92501
13

14 APPEARANCES:

15 For the Debtor:               BENJAMIN R. HESTON, ESQ.
                                 Nexus Bankruptcy
16                               3090 Bristol Street, Suite 400
                                 Costa Mesa, California 92626
17                               (949) 312-1377

18 For the Chapter 13 Trustee:   BRIDGET KELLY, ESQ.
                                 Rodney Danielson, Chapter 13
19                                 Trustee
                                 3787 University Avenue
20                               Riverside, California 92501
                                 (951) 826-8000
21
                                 MARK SORSANAVONGSA,
22                                 Vice President of Premier
                                   Capital, LLC
23

24
   Proceedings recorded by electronic sound recording;
25 transcript produced by transcription service.

ii

1  Transcriber:                    Briggs Reporting Company, Inc.
                                   9711 Cactus Street
2                                  Suite B
                                   Lakeside, California 92040
3                                  (310) 410-4151

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

*Briggs Reporting Company, Inc.*

iii

I N D E X

WITNESSES:                                    EXAMINATION

DONALD MEINBERG                                    2
                                                   6

1

1   RIVERSIDE, CALIFORNIA  WEDNESDAY, MAY 17, 2023  8:00 AM

2                              --oOo--

3          TRUSTEE KELLY:  Donald Meinberg, Case Number 23-

4   11360.

5          MR. HESTON (telephonic):  Should I state my

6   appearance?  Are --

7          TRUSTEE KELLY:  Yes.

8          MR. HESTON:  This is Ben Heston appearing on

9   behalf of the Debtor.

10         TRUSTEE KELLY:  Yes, sir.  Okay.  Thank you.

11         And the creditor that is here, you go ahead and

12   state your name, please?

13         MR. SORSANAVONGSA (telephonic):  Yes.  It is Mark

14   Sorsanavongsa from Premiere Capital.

15         TRUSTEE KELLY:  Okay.  Thank you.

16         All right.  Mr. Meinberg, if you could please

17   raise your right hand?

18             DONALD MEINBERG - DEBTOR - SWORN

19         THE WITNESS (telephonic):  Yes.

20         TRUSTEE KELLY:  Thank you.  Please state your name

21   for the record.

22         THE WITNESS:  Donald Meinberg.

23         TRUSTEE KELLY:  All right.  Thank you.  And we did

24   receive copies of a California driver's license and W-2

25   form, and the numbers do match the petition.

2

1  Plan payment, and we'll come back to that.  Mortgage

2  payments, we will come back to that.  We'll interlineate the

3  tax refunds.

4                    EXAMINATION

5  BY TRUSTEE KELLY:

6  Q    Are you purchasing or leasing any vehicles?

7  A    I am not purchasing or leasing any vehicles, no.

8  Q    Okay.  And is the address that you listed on your

9  papers, is that your current residence?

10 A    Yes, ma'am.

11 Q    And did you personally sign your papers?

12 A    Yes, ma'am.

13 Q    And are you aware of the information on your papers?

14 A    Yes, ma'am.

15 Q    And is everything true and correct?

16 A    Yes, ma'am.

17 Q    Did you list all of your assets?

18 A    Yes, I did.

19 Q    Did you list all of your creditors?

20 A    Yes, I did.

21 Q    Have you ever filed bankruptcy before?

22 A    No.

23 Q    Do you -- yeah.  Okay.  Do you owe any child support or

24 alimony?

25 A    No.

*Briggs Reporting Company, Inc.*

3

1  Q    Have you filed all tax returns you are required to

2  file?

3  A    Yes, ma'am.

4  Q    And we did receive the 2022 scanned in.  Thank you.  An

5  employment address is on schedule I.

6        TRUSTEE KELLY:  Okay.  So, Ben, I know you got the

7  list.  Did you get my e-mail this morning, my e-mail back to

8  you?

9        MR. HESTON:  No.

10        TRUSTEE KELLY:  Okay.  So I looked at the dec that

11  you filed today, and it didn't have anything attached to it.

12        MR. HESTON:  The proof that -- yeah.

13        TRUSTEE KELLY:  Yeah.

14        MR. HESTON:  Okay.  We'll re-file it with the --

15        TRUSTEE KELLY:  Okay.  So --

16        MR. HESTON:  -- with the proof.

17        TRUSTEE KELLY:  Okay.  Yeah.  If you can get that

18  done this morning, too.  Thank you.

19        MR. HESTON:  Yeah.

20        TRUSTEE KELLY:  And then the other -- you said you

21  had a question.  You can talk later about the plan, the

22  amended plan, that's fine.  And then the 522(f) motion.

23        The -- okay.  So the 2016(b) said that you didn't

24  have -- get any fees paid up front.  Is that accurate?

25        MR. HESTON:  There was some money that I was paid

4

1   up front, but that was to cover -- I believe they set it up

2   so it was a filing fee, and then some fees from Mr.

3   Meinberg's wife's bankruptcy, who I did last year.

4           TRUSTEE KELLY:  Okay.  Yeah.

5           MR. HESTON:  So nothing towards this case though.

6           TRUSTEE KELLY:  Okay.  On the SOFA on number 16,

7   it says that 1,037.95 was paid for a filing fee, credit

8   report and attorney fees.  So, I'm just verifying --

9           MR. HESTON:  I got it, so should I -- I should

10  change -- should I amend that?

11          TRUSTEE KELLY:  Well, I mean, you don't have to

12  amend the SOFA, but I guess I want to verify that that --

13  that is, that you really didn't get anything up front.

14          MR. HESTON:  Correct.  Yeah.  Nothing -- yeah.

15          TRUSTEE KELLY:  Okay.  And -- and I'm going to get

16  like to the creditor in a moment, but just for my -- wait.

17          Actually, for the creditor, I see you're Premiere

18  Capital.  Is that a unsecured debt or what's Premiere

19  Capital?

20          MR. SORSANAVONGSA:  We -- we're a secured debt

21  through a judgment lien that was also adjudicated in Ms.

22  Meinberg's bankruptcy, prior bankruptcy --

23          MR. HESTON:  This is Linda Meinberg's bankruptcy.

24  Premiere Capital and NC Venture.  Premiere Capital is the

25  assignee of the NC Venture.

5

1          TRUSTEE KELLY:  Okay, okay.  Because I

2 (indiscernible) and (indiscernible).  Okay.  So that's the

3 creditor.  All right.

4          So I'm just going to state (indiscernible)

5 Ventures is -- okay.  So it's the same creditor.  So I'm

6 just -- why is that creditor -- I know you're intending to

7 do a 522(f) on that one, but why is that not part of the

8 class five calculation?

9          MR. HESTON:  Because the community discharge would

10 make it unenforceable.

11          TRUSTEE KELLY:  Okay.  That's what I was guessing

12 you were going to say.  I wasn't sure.  All right.  So --

13 and then my next question is, why -- why isn't this a

14 Chapter 7?  Just do the avoiding there?  Why do you need the

15 13?

16          MR. HESTON:  Well, because if there is anything

17 remaining, you know, if it comes down to it and there is,

18 you know, something remaining that is secured, then the

19 Chapter 13 would allow that to be paid over five years.

20          TRUSTEE KELLY:  Okay.  Because at this point --

21 let me see.  You have -- you're paying basically like a few

22 hundred dollars of unsecured and your attorney fees and

23 that's it in the plan, is that right?  Is that basically it?

24          MR. HESTON:  Yeah.  Until we figure out the 522

25 motion, yes.

*Briggs Reporting Company, Inc.*

6

1          TRUSTEE KELLY:  Okay.  Okay.  So, go ahead,

2  creditor -- I'm sorry, I forgot your name.

3          MR. SORSANAVONGSA:  Yeah.  No, that's fine.  You

4  can just call me Mark --

5          TRUSTEE KELLY:  Okay, Mark.

6          MR. SORSANAVONGSA:  -- and I'll jump in.  And

7  thank you.

8          TRUSTEE KELLY:  Go ahead -- go ahead with your

9  objection.

10          MR. SORSANAVONGSA:  Thank you.

11                    FURTHER EXAMINATION

12  BY MR. SORSANAVONGSA:

13  Q    Don, you got a $90,000 inheritance.  Can you please

14  tell us when you received it and what you spent the money

15  on?

16  A    The inheritance was early last year, and the money was

17  spent on outstanding bills.

18  Q    Okay.  So is that within the last -- within the last

19  year then, within the last 12 months you received it then

20  you've spent it?

21  A    Yes, sir, that's correct.

22  Q    Is there a paper trail?

23  A    For every dollar?  There isn't --

24  Q    For the majority of the money.

25  A    Yes, sir.

7

1 Q    Okay.  Don, you're an author of multiple books,

2 correct?

3 A    I'm an author of one book that has four -- there's --

4 it's four books into one.

5 Q    Okay.  Do you receive any income from the sale of those

6 books, and how do you receive the income?

7 A    I have not received any income from those books in the

8 last -- since pre-covid.

9 Q    Okay.  In a prior claim of exemption you had listed

10 that you received a car allowance.  Can you please tell us

11 which employer was giving you a car allowance?

12 A    Yes.  It was next -- it was Service Master Emergency

13 Management Team.

14 Q    Okay.  And in your claim of exemption you also listed

15 income with Reflections Christian Fellowship.  Are you still

16 receiving that income?

17 A    No.

18 Q    Okay.  When did you stop receiving that income?

19 A    Twenty -- it was pre-covid, because the church was

20 struggling with finance -- 2017, 2018.

21 Q    Okay.  And in the claim of exemption you had also

22 listed that you had $8,725 worth of jewelry.  In your

23 bankruptcy petition you listed only $1,000 worth of jewelry.

24 Can you please explain the difference?

25 A    No, I don't -- I don't recall putting -- what we put

8

1  for the original exemption.  So, no, I don't -- I don't

2  recall.

3  Q    As it stands today then, how much in jewelry do you

4  have?

5  A    I -- most of the jewelry my wife has.  I had zero.  I

6  have zero -- well, I have my watch and I have my wedding

7  ring.  I don't wear jewelry.  I don't own jewelry.  I have

8  nothing.

9  Q    Have you or your wife sold any jewelry within the last

10 two years?

11 A    No, sir.

12 Q    In your wife's bankruptcy you had listed two

13 timeshares.  One, 183 Lagunita Lane in Bear Lake,

14 California, and two, 620 Lake Havasu City in Arizona.  Do

15 you still own those timeshares?

16 A    Yes.

17 Q    What is the value of those timeshares, please?

18 A    Well, I've been trying to sell them for a long time.

19 They have no -- minimum I'm going to say.  I've had a couple

20 timeshare type companies try to sell them.  They just don't

21 have any value today.

22 Q    How long are the timeshares for?

23 A    One week.  One fixed week.

24 Q    You state that your one --

25         MR. SORSANAVONGSA:  Sorry.  Ms. Trustee, do you

9

1 want to jump in?

2          TRUSTEE KELLY:  Yeah.  I was just going to -- so

3 normally we just allow a creditor to have like a few minutes

4 of questions.  So, I'll give you two more minutes, and then

5 we'll have to move on.  So, I'm sorry, so.

6          MR. SORSANAVONGSA:  No.  Thank you so much for

7 your time.

8          TRUSTEE KELLY:  Sure.

9 BY MR. SORSANAVONGSA:

10 Q    Don, you listed you're 100-percent owner of Reflections

11 Christian Fellowship.  Can you tell us how much you get paid

12 from the church, and what does the church own?

13 A    First of all, I don't own any part of the church.  It's

14 not -- it's a community church that I'm the pastor of the

15 church.  I don't have any assets.  We don't own a building.

16 We have -- no building, no assets whatsoever.  We rent a

17 small little banquet hall in the City of Perris.  I don't

18 own the church, I'm the pastor of the --

19 Q    Does the church pay any of your expenses or has the

20 church paid any of your expenses in the past?

21 A    No.

22 Q    Do you have signatory authority over the bank accounts

23 of the church?

24 A    I -- there are multiple people that has signator

25 authority of the church.

10

1  Q    Are you one of those people?

2  A    Yes.

3  Q    Okay.

4  A    But I cannot -- I cannot spend any money without

5  approval of the board of leaders of the church.

6  Q    All right.  And those -- those accounts are -- they are

7  not listed on your bankruptcy petition, correct?

8  A    I don't own it, so, yeah -- no, the answer's no.

9  Q    You have signatory authority over this -- over them

10 though, correct?  Yes or no, please.

11 A    No.  I have -- I'm one signator authority over --

12 Q    Thank you.  You had also listed $400 in monthly

13 charitable contributions.  Where do those go and how are

14 those charitable contributions made, via check, other form?

15 A    Yes.

16 Q    "Yes" to what, Mr. Meinberg?

17 A    Yes to -- I donate money to my church, and I do it

18 based on a check, money order, cash, whatever I have that's

19 convenient.

20 Q    Okay.  So that -- you make donations to the church that

21 you're a pastor of --

22 A    Correct.

23 Q    -- correct?

24 A    That is correct.

25         TRUSTEE KELLY:  Okay, creditor --

11

1 BY MR. SORSANAVONGSA:

2 Q    And you don't -- you don't receive any payment for your

3 services as a pastor, correct?

4 A    Well, to be honest, I did, but everything changed pre-

5 covid -- I mean, excuse me, everything changed at covid.

6 The church moved.  The church reduced extremely much.  The

7 church almost fell apart.  So, the church ran out of money.

8 So I guess the answer to your question is, no.

9         MR. SORSANAVONGSA:  All right.  One parting

10 question because I know I'm running short on time.

11         TRUSTEE KELLY:  Okay.  Yeah, yeah.  Just one last

12 line, and then we've got to go -- we've got to move on.

13         MR. SORSANAVONGSA:  Yeah.  Thank you.

14 BY MR. SORSANAVONGSA:

15 Q    You recently listed a $10,000 IRA at PNC Bank.  When

16 was this IRA funded, because it was not previously listed in

17 Linda's bankruptcy?

18 A    It was last year.

19 Q    Within the last 12 months?

20 A    This is May.  Right around 12 months, yeah.

21 Q    And where did the money come from?

22 A    That was -- that was the last part of the money from

23 the inheritance.

24         TRUSTEE KELLY:  Okay.  So if you need further

25 questions you've got to do an exam, but I'm going to stop

12

1  the questions.  Sorry.  Usually you just get a few minutes,

2  so.

3           MR. SORSANAVONGSA:  Thank you so much.

4           TRUSTEE KELLY:  Sure, sure.

5           Okay.  Some of the answers that your Debtor gave

6  -- so, you need to amend the A/B to add the timeshares.

7  They're not on the A/B, the schedules.

8           MR. HESTON:  Well, okay.  Yeah, I'll put them on

9  there.

10          TRUSTEE KELLY:  And just if you can verify that --

11 I don't know.  I guess it was on the other bankruptcy, but

12 if it's -- if it's something where -- just in her name or

13 something, just make sure that everything is listed, even if

14 it's just in reference to her name only and all that stuff.

15 Okay.

16          MR. HESTON:  Yeah, yeah.

17          TRUSTEE KELLY:  Okay.  Back to -- okay.  So you

18 had your updated dec for the mortgage payments -- mortgage

19 payment proof for the first, second.  And then, plan

20 payment.  All right.  So I saw the TFS that started I guess

21 on the 15th.  That's not going to work because it won't

22 close until next week.  So, if your debtor does MoneyGram

23 today, that will work with -- ASAP, otherwise, the other

24 one's not going to work.

25          MR. HESTON:  Okay.

13

1        TRUSTEE KELLY:  Okay?  So, if I don't get the

2   payment, I'll file an objection asking for dismissal, but if

3   you can do the MoneyGram, then that will be fine.

4        MR. HESTON:  Okay.

5        TRUSTEE KELLY:  Then you file that, then the only

6   issue would be  -- I mean, obviously you're going to do the

7   522(f) for the -- for Premiere Capital/NC Ventures.  So,

8   depending on the outcome of that, will -- you know, either

9   will make or break this case obviously, because if somebody

10  does a 522(f), can happen, then the plan being feasible, and

11  then that will be dismissed.  So, yeah.  Right.  So I --

12       MR. HESTON:  Okay.

13       TRUSTEE KELLY:  (Indiscernible.)  Okay.  All

14  right.  Thank you, everybody.

15     (Proceedings concluded.)

16

17

18       I certify that the foregoing is a correct

19  transcript from the electronic sound recording of the

20  proceedings in the above-entitled matter.

21

22  /s/ Holly Steinhauer_____        1-30-24_____
    Transcriber                        Date

23

24

25

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**3090 Bristol Street #400
Costa Mesa, CA 92626**

A true and correct copy of the foregoing document entitled (*specify*): **THIRD SUPPLEMENTAL OPPOSITION TO MOTION TO DISMISS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:
Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 2/1/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Rod Danielson (TR)    notice-efile@rodan13.com
Natalie E Lea    natalie.lea@bonialpc.com
Mukta Suri    Mukta.Suri@BonialPC.com
United States Trustee (RS)    ustpregion16.rs.ecf@usdoj.gov
Holly Walker    holly@veruslawgroup.com

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 2/1/2024 I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Judge Wayne E. Johnson
3420 Twelfth Street
Suite 384 / Courtroom 304
Riverside, CA 92501-3819

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL**
Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed (state method for each person or entity served):

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/1/2024 | Benjamin Heston | /s/Benjamin Heston |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.